CASE NO. _20-MC-12-SLP_

---

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

---

**RICHARD FELTZ, on behalf of himself and all others similarly situated,**

**Plaintiffs,**

**v.**

**TULSA COUNTY,** *et al.,*

**Defendants.**

---

## NON-PARTY JARI ASKINS' MOTION TO QUASH SUBPOENA *DUCES TECUM* AND FOR PROTECTIVE ORDER, AND BRIEF IN SUPPORT

---

**JEB JOSEPH, OBA#19137**
**Assistant Attorneys General**
**Oklahoma Attorney General's Office**
**Litigation Division**
**313 NE 21st Street**
**Oklahoma City, Oklahoma 73105**
**Telephone: (405) 521-3921   Facsimile: (405) 521-4518**

*Attorney for Non-Party*

**November 23, 2020**

## <u>TABLE OF CONTENTS</u>

**TABLE OF CONTENTS**................................................................i

**TABLE OF AUTHORITIES** ...........................................................iii

**MOTION TO QUASH SUBPOENA** *DUCES TECUM* ......................................1

**STATEMENT PURSUANT TO LOCAL CIVIL RULE 37.1**................................1

**PLACE OF PRODUCTION** ...........................................................1

**STANDARD OF REVIEW** ...........................................................5

**ARGUMENT AND AUTHORITY** ......................................................6

**PROPOSITION I:**

    **TIMELINESS OF THIS MOTION IS APPROPRIATE** .....................6

**PROPOSITION II:**

    **RULE 26 PARAMETERS FAVOR QUASHING THE SUBPOENA**...............6

**PROPOSITION III:**

    **RELEVANCE OF THE SUBPOENA IS LACKING** ...........................7

**PROPOSITION IV:**

    **PROPORTIONALITY OF THE SUBPOANA IS LACKING** ...................8

    a. Duplicative nature of demand vitiates proportionality of Subpoena ......................8

    b. Probative Value of production sought vitiates proportionality of Subpoena ........10

**PROPOSITION V:**

    **BURDEN IMPOSED BY THE SUBPOENA IS UNDUE** ...................11

**PROPOSITION VI:**

    **SOVEREIGNTY AND IMMUNITY PRECLUDE PLAINTIFF'S DEMANDS**................................................................14

**CONCLUSION** .................................................................................................................... 16

**CERTIFICATE OF SERVICE** ............................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

*Belknap v. Schild,*
161 U.S. 10 (1896) ........................................................................................................15

*Bonnet v. Harvest (U.S.) Holdings, Inc.,*
741 F.3d 1155 (10th Cir. 2014) ............................................................................. 14, 15

*Copeland v. C.A.A.I.R., Inc.,*
2020 WL 972754 (N.D. Okla. Feb. 28, 2020) ..........................................................6

*Exxon Shipping Co. v. United States Department of Interior,*
34 F.3d 774 (9th Cir. 1994) ........................................................................................11

*Franchise Tax Bd. of California v. Hyatt,*
139 S. Ct. 1485 (2019) .................................................................................................14

*In re Pub. Access to Elec. Case Info.,*
271 P.3d 775 (Okla. 2009) ......................................................................................4, 12

*In re Subpoena Duces Tecum,*
228 F.3d 341 (4th Cir. 2000) ......................................................................................15

*Koch v. Koch Indus., Inc.,*
203 F.3d 1202 (10th Cir. 2000) ...................................................................................8

*Kona Spring Water Distrib., Ltd. v. World Triathlon Corp.,*
2006 WL 905517 (M.D. Fla. Apr. 7, 2006) ...............................................................5

*Larson v. Domestic & Foreign Commerce Corp.,*
337 U.S. 682 (1949) .....................................................................................................15

*Laxalt v. McClatchy,*
116 F.R.D. 455 (D. Nev. 1986) ...................................................................................7

*New Mexico Oncology v. Presbyterian Healthcare Servs.,*
2016 WL 3452757 (D.N.M. May 10, 2016) .............................................................11

*Oyenik v. Corizon Health Inc.,*
2014 WL 12787872 (D. Ariz. Nov. 20, 2014) ...........................................................7

*Perez v. Boeken,*
2019 WL 5080392 (W.D. Tex. Oct. 10, 2019), aff'd,
2020 WL 96907 (W.D. Tex. Jan. 8, 2020) .................................................................10

*Premier Election Sol., v. Systest Labs, Inc.,*
2009 WL 3075597 (D. Colo. Sept. 22, 2009) ...............................................................7

*Reichard v. United of Omaha Life Ins. Co.,*
805 F.App'x 111 (3d Cir. 2020) ........................................................................... 10, 11

*Rice v. United States,*
164 F.R.D. 556 (N.D. Okla. 1995) ..............................................................................5

*Smith v. Secretary of New Mexico Department of Corrections,*
50 F.3d 801 (10th Cir. 1995) ......................................................................................8

*Speed-Trac Tech v. Estes Exp. Lines, Inc.,*
2008 WL 2309011 (D. Kan. June 3, 2008) .................................................................6

*Sperry v. Corizon Health, Inc.,*
2020 WL 5642343 (D. Kan. Sept. 22, 2020) ..............................................................7

*Spraggins v. Reg'l Med. Ctr.,*
2010 WL 5137439 (D. Kan. Dec. 10, 2010) ...............................................................5

*United States v. Murdock Mach. & Eng'g Co. of Utah,*
81 F.3d 922 (10th Cir. 1996) ....................................................................................15

*W. Convenience Stores, Inc. v. Sunco Energy (U.S.A.) Inc.,*
2014 WL 1257762 (D.Colo. March 27, 2014) ..........................................................11

*Zukoski v. Philadelphia Elec. Co.,*
1994 WL 637345 (E.D. Pa. Nov. 14, 1994) ...............................................................7

## STATUTES

OKLA. STAT. tit. 20 § 16.1 ...........................................................................................4

## RULES

Fed. R. Civ. P. 26........................................................................................................8

Fed. R. Civ. P. 26(b)(1) ...................................................................................... 5, 6, 10

Fed. R. Civ. P. 26(b)(2)(C) ...........................................................................................8

Fed. R. Civ. P. 45 .........................................................................................................5

Fed. R. Civ. P. 45(c)(2) ...............................................................................................1

Fed. R. Civ. P. 45(d)(1) .............................................................................................11

Fed. R. Civ. P. 45(d)(2)(B) ..........................................................................................6

Fed. R. Civ. P. 45(d)(3) .............................................................................................12

Fed. R. Civ. P. 45(d)(3)(A)(iv) .....................................................................................6

Fed. R. Evid. 401 .........................................................................................................8

Fed. R. Evid. 402 .........................................................................................................8

## OTHER

Okla. Const. art. IV, § 1 .............................................................................................4

Okla. Const. art. VII, § 6 ............................................................................................4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

RICHARD FELTZ, on behalf of himself
and all others similarly situated,

               Plaintiffs,

v.

TUSLA COUNTY, *et al.,*

               Defendants.

**OKWD Case No.:**  20-MC-12-SLP

**(Oklahoma Northern District
Case No.: 18-cv-0298-CVE-JFJ)**

## NON-PARTY JARI ASKINS' MOTION TO QUASH SUBPOENA *DUCES TECUM* AND FOR PROTECTIVE ORDER, AND BRIEF IN SUPPORT

The Administrative Director of the Courts, Jari Askins, ("Askins"), on behalf of the Administrative Office of the Courts ("AOC"), by and through counsel, Assistant Attorney General Jeb Joseph, moves this Court to quash the subpoena ("Subpoena")[1] issued by Plaintiff, Richard Feltz, and to issue a protective order as requested herein.

### STATEMENT PURSUANT TO LOCAL CIVIL RULE 37.1

Counsel for Plaintiff offices at 567 E. 36th Street North, in Tulsa, OK. Counsel for AOC offices at 313 NE 21st Street, Oklahoma City, OK. These two locations are more than one hundred (100) miles in distance from each another. The undersigned conferred in good faith by telephone on at least three separate occasions with counsel for Plaintiff about the subpoena at issue, but counsel were not able to come to an accord.

### PLACE OF PRODUCTION

Fed. R. Civ. P. 45(c)(2) states that a document subpoena "may command: (A) production of documents, electronically stored information, or tangible things at a place

---

[1] *See Subpoena,* attached hereto as Exhibit 2.

**within 100 miles** of where the person resides, is employed, or regularly transacts business in person; . . ." (Emphasis added.) Plaintiff's Subpoena seeks production of information from the AOC, which is located in Oklahoma City, OK, and more than one hundred (100) miles from Plaintiff's counsel's office. Plaintiff's counsel's office is, thus, outside the allowed distance for in-person compliance. AOC is located within the area covered by the United States District Court for the Western District of Oklahoma. Thus, anything AOC might produce would post from Oklahoma City, OK.

## BRIEF IN SUPPORT

Plaintiff was apparently involved in some type of criminal activity in Tulsa County. Plaintiff is one of a number of individuals who took issue with bail that was (or was not) offered in one or more criminal cases in Tulsa County, Oklahoma. Neither the AOC nor Askins played a role in determining Plaintiff's bail, or the bail of any other detainee in Tulsa County. AOC Offices are located in Oklahoma City, OK, which is where AOC and Askins perform their duties.

The Subpoena seeks to impose significant burdens on non-party AOC and its resources, and seeks to do so in an unreasonably short time[2]. The Subpoena fails to meet the fundamental requirements of proportionality and relevance. The AOC is under a directive from the Oklahoma Supreme Court proscribing the type of bulk data production sought by the Subpoena. Most importantly, AOC is not subject to the jurisdiction of the court from which Plaintiff issued the Subpoena. Accordingly, the Subpoena should be quashed, and an order should be entered proscribing similar subpoenas to AOC in the future.

---

[2]Although the stated deadline of the Subpoena was very short, counsel subsequently agreed to waive that deadline.

1.      At approximately 11:25 a.m., on Thursday, October 15, 2020[3], the Subpoena was served on Askins by process sever at the AOC Offices. (*See Statement of Mike Siscoe,* attached hereto as ***Exhibit 1***.)

2.      Neither Askins nor AOC is a party to the present litigation.

3.      The Subpoena purports to demand compliance at 5:00 p.m. on October 23, 2020, a mere eight (8) calendar days from the date of service upon AOC.

4.      The Subpoena includes two broad categories of materials sought, one of which by itself has at least thirty-two (32) parts and subparts, spanning a nine hundred and fifty-nine (959) day time span. (March 1, 2018 to "present," with October 15, 2020 being the "present" date of service upon AOC).

5.      The Subpoena seeks a variety of unspecified materials such as "*[a]ny* references" or "tie-ins" to "*any* docket entries to underlying … data." [Ex. 2, p. App'x A]. (Emphasis added.)

6.      The Subpoena also seeks to command AOC to format its materials in certain ways, such as "delimited flat file" or "Excel file extraction," (regardless of how AOC might store those materials in the usual course of business), and that any production should be parceled into "of reasonable size to open for analysis." (*I*)*d.* The Subpoena fails to define what "reasonable" means, or to define the analysis, by whom, using which system(s), expertise, or review tool(s).

7.      The Subpoena also seeks to command the AOC to extract and release bulk data from tens of thousands of cases filed in Tulsa County District Court, in direct violation of an

---

[3]The Subpoena bears date of October 9, 2020, but was not served until almost a week later, on October 15, 2020.

Oklahoma Supreme Court Administrative Directive prohibiting the AOC from releasing such data. *In re Pub. Access to Elec. Case Info.*, 271 P.3d 775 (Okla. 2009). The Oklahoma Supreme Court provides public access to electronic case information on its official website, the Oklahoma State Courts Network (www.OSCN.net). The Subpoena seeks to require the AOC to compile and release court data intended for internal use only, (which does not constitute the official court record), and which Oklahoma's Supreme Court has determined should not be publicly distributed.

8.     The Judicial branch of the State of Oklahoma is one of three (3) separate and distinct Departments of the State. OKLA. CONST. art. IV, §1. The Supreme Court of Oklahoma possesses general superintending control and administrative authority over all courts in the State. The Oklahoma Constitution provides that the:

> *[G]eneral administrative authority over all courts in this State, . . . is hereby vested in the Supreme Court* and shall be exercised by the Chief Justice in accordance with its rules. The Supreme Court *shall appoint an administrative director and staff, who shall serve at its pleasure to assist the Chief Justice in his administrative duties . . . .*

OKLA. CONST. art. VII, § 6 (emphasis added).

The Administrative Director of the Courts and the staff of the AOC serve at the pleasure of the Supreme Court to assist the Chief Justice in performance of administrative duties. OKLA. STAT. tit. 20 §16.1. These duties include establishment and maintenance of the Oklahoma Court Information System and the management of electronic case data within that system.

9.     The State of Oklahoma is a sovereign state, retains sovereign immunity to many forms of legal actions against it, and retains its immunity as recognized by the Eleventh Amendment to the United States Constitution. The Oklahoma Supreme Court has not waived

that immunity, nor has any lawful act of the United States Congress effectively taken away that immunity.

10.     The doctrine of sovereign immunity protects AOC from Plaintiff's subpoena and the burdens Plaintiff attempts to impose on the sovereign State of Oklahoma.

11.     The Tenth Amendment of the United States Constitution protects the powers of the States from intrusion by the Federal government. The State of Oklahoma retains the power to manage its Judiciary and to exercise administrative control over its own court system. The Oklahoma Supreme Court has issued an administrative order, which directly governs the subject matter at issue. However, Plaintiff's subpoena seeks to throw aside the Supreme Court's directive. The Tenth Amendment protects the Supreme Court from being forced to overturn its own administrative order simply because the Plaintiff crafted a subpoena purporting to do so.

## STANDARD OF REVIEW

Rule 45 subpoenas are considered discovery within the meaning of the Federal Rules of Civil Procedure. *Rice v. United States*, 164 F.R.D. 556, 556-57 (N.D. Okla. 1995). A subpoena is therefore subject to Rule 26(b)(1)'s requirements and must seek information that is relevant to a party's claims or defenses and proportional to the needs of the case. *See Spraggins v. Reg'l Med. Ctr.*, 2010 WL 5137439, at *1 (D. Kan. Dec. 10, 2010) ("A subpoena must be within the proper scope of discovery ...."); *Kona Spring Water Distrib., Ltd. v. World Triathlon Corp.*, No. 8:05-CV-119-T-23TBM, 2006 WL 905517, at *2 (M.D. Fla. Apr. 7, 2006) ("[A] court must examine whether a request contained in a subpoena duces tecum is overly broad or seeks irrelevant information under the same standards set forth in Rule 26(b) and as applied to Rule 34 requests for production.").

"A subpoena must also avoid subjecting a third party to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv)." *Copeland v. C.A.A.I.R., Inc.*, No. 17-CV-564-TCK-JFJ, 2020 WL 972754, at *2 (N.D. Okla. Feb. 28, 2020). "In determining whether undue burden exists, the Court balances the need for discovery against the burden imposed on the person ordered to produce the documents; the status of a person as a non-party is a factor that weighs against disclosure." *Id. citing, Speed-Trac Tech. v. Estes Exp. Lines, Inc.*, 2008 WL 2309011, at *2 (D. Kan. June 3, 2008) (internal quotation omitted). "The Court considers the relevance of the documents, the requesting party's need for the documents, the breadth of the request, the time period covered, the particularity of the request, and the burden imposed." *Id.*

## ARGUMENT AND AUTHORITY

## I. TIMELINESS OF THIS MOTION IS APPROPRIATE.

Under Fed. R. Civ. P. 45(d)(2)(B), objections to a subpoena "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." The Subpoena's language requires compliance by October 23, 2020 (a mere eight days after service). Despite Plaintiff's abbreviated timespan for AOC's demanded compliance in the Subpoena, counsel for the parties communicated about the deadline, and agreed that the listed date was too soon. Counsel for the parties agreed to set aside the due date during their (ultimately unsuccessful) attempts to resolve the subpoena prior to motion practice. Thus, this objection is timely.

## II. RULE 26 PARAMETERS FAVOR QUASHING THE SUBOENA.

As an initial matter, Fed. R. Civ. P. 26(b)(1) states, in pertinent part:

Parties may obtain discovery regarding any nonprivileged matter that is **relevant** to any party's claim or defense and **proportional to the needs of the case**, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and **whether the burden or expense of the proposed discovery outweighs its likely benefit**.

(Emphasis added.) "In other words, considerations of both relevance and proportionality now expressly govern the scope of discovery." *Sperry v. Corizon Health, Inc.*, No. 18-3119-EFM-ADM, 2020 WL 5642343, at *2 (D. Kan. Sept. 22, 2020). With this in mind, we turn to the instant Subpoena.

## III. RELEVANCE OF THE SUBPOENA IS LACKING.

"While the court has considerable discretion with regard to regulating discovery which is exchanged in a lawsuit, **discovery from third-parties in particular must, under most circumstances, be closely regulated**." *Premier Election Sol., Inc. v. Systest Labs, Inc.*, No. 09-cv-01822-WDM-KMT, 2009 WL 3075597, at *3 (D. Colo. Sept. 22, 2009) (Emphasis added.). Some courts have recognized an elevated relevance analysis when dealing with non-parties. For example, in the Eastern District for Pennsylvania, a court there observed, "[i]t is a generally accepted rule that standards for non-party discovery require a stronger showing of relevance than for party discovery.") *Zukoski v. Philadelphia Elec. Co.*, No, CIV. A. 93–4780, at *3 (E.D.Pa. Nov. 14, 1994). Similarly, the United States District Court for Arizona said, "[t]his relevance standard is heightened in the context of nonparty subpoenas." *Oyenik v. Corizon Health Inc.*, No. CV1301597PHXSPLBSB, 2014 WL 12787872, at *1 (D. Ariz. Nov. 20, 2014). *See also Laxalt v. McClatchy*, 116 F.R.D. 455, 458 (D. Nev. 1986) ("The standards for nonparty discovery ... require a stronger showing of relevance than for simple party discovery.").

As to relevance, generally, "Federal Rule of Evidence 401 defines relevant evidence as 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.' Fed.

R. Evid. 401. Federal Rule of Evidence 402 bars the introduction of any evidence that is not relevant." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1227 (10th Cir. 2000). It is unclear that Plaintiff's Subpoena meets the relevance criterion. Plaintiff's case takes issue with bail offered (or not offered) to him as a criminal defendant in Tulsa County. Nothing about the Subpoena seeks information from AOC tending to make any fact of consequence in the litigation more or less probable. Plaintiff's Subpoena appears to either be a dredging expedition (in search of potential new plaintiffs or "similarly situated persons" and class members), or it is simply a red herring distracting the litigation from the specific and substantive claims and defenses at issue for Mr. Feltz. In either case, the Subpoena's relevance to the present claims and defenses is lacking, and fails to meet the bar set by Rule 26. The Court should quash the Subpoena.

## IV. PROPORTIONALITY OF THE SUBPOENA IS LACKING.

Discovery must be proportional to the needs of the case. (Fed. R. Civ. P. 26). Plaintiff's Subpoena demands a great deal of AOC, but provides little or nothing in terms of helping the factfinder herein decide whether Tulsa County District Courts were offering appropriate bonds or bail to Plaintiff when he was a detainee or criminal defendant.

### a. Duplicative nature of demand vitiates proportionality of Subpoena.

Plaintiff's Subpoena also appears to demand some information which is duplicative of information which is either already available online to the Plaintiff (and the general public), or is duplicative of information which Plaintiff already possesses. "'Cumulative evidence' is defined as evidence 'which goes to prove what has already been established by other evidence.' " *Smith v. Secretary of New Mexico Department of Corrections*, 50 F.3d 801, 829 (10th Cir. 1995) (quotation omitted). And while Rule 26(b)(2)(C), Fed. R. Civ. P. permits the Court to limit discovery, which is otherwise allowed by the Federal Rules of Civil Procedure, if the Court

"determines that ... the discovery sought is ... cumulative or duplicative[,]" id. (emphasis added), the Court may do so only if "th[at] discovery ... is unreasonably cumulative or duplicative[.]" *id.* Plaintiff's Subpoena fails this metric.

For example, under the "First Category" of materials demanded, Plaintiffs' Subpoena requests a "flat file format . . . or Excel file . . . for cases in Tulsa County District Court, Criminal Division." Under numbered item 1 of that category, the Subpoena then seeks: "(a) County," "(b) case number, "(c) Plaintiffs' names," and (d) "Judge assigned." All cases sought are from Tulsa County, so repeatedly pulling that information for each case is patently duplicative. As for the case number, presumably the Plaintiff in this current civil action has access to his own case numbers from personal knowledge, the personal knowledge of his attorneys (if any), or a simple public search of www.oscn.net. As for "Plaintiffs' names," presumably any Plaintiff knows his or her own name. To the extent the Subpoena meant to ask for the "Plaintiff" in the various criminal actions, those would be the State of Oklahoma. Finally, as to the judge assigned in each case, that information is already available to any Plaintiff in the same manner as would be the various case numbers. Forcing the AOC to compile all of this information is absurd, and manifestly not proportionate to the needs of the instant case.

The "First Category" number 2 of Plaintiff's Subpoena fares no better under close inspection. There, Plaintiff seeks to for AOC to compile, "(a) case number," "(b) case type," "(c) case filed/case creation date," "(d) closed date," and "(e) judge." Two of these subcategories seek exactly the same information as do parts of number 1 ("case number" and "judge"). And, once again, the "case type" and "filed/creation date" would be manifest from the Plaintiff's (or Plaintiff's counsel) underlying knowledge of the criminal prosecutions.

Alternatively, Plaintiff and his counsel could perform their own searches of the publicly available information at www.oscn.net. These types of demands in Plaintiff's Subpoena are unjustified, and unreasonably duplicative. Even if the information sought might, theoretically, be relevant, forcing non-party AOC to gather it is not proportional to the needs of Plaintiff's case against Defendants. Additionally, AOC has no duty to produce materials, which are already available to the public.[4]

### b. Probative value of production sought vitiates proportionality of Subpoena.

As one federal court in Texas recently observed, "even if [the requested] information does have some attenuated relevance, permitting its discovery is not proportional to the needs of the case under these circumstances. Under Rule 26(b)(1), not only must evidence be relevant to be discoverable, it must be 'proportional to the needs of the case.'" *Perez v. Boecken*, No. SA-19-CV-00375-XR, 2019 WL 5080392, at *4 (W.D. Tex. Oct. 10, 2019), aff'd, No. SA-19-CV-00375-XR, 2020 WL 96907 (W.D. Tex. Jan. 8, 2020). Similarly, the Third Circuit recently noted that, "[t]he District Court's denial of discovery was reasonable. Discovery must always be 'proportional to the needs of the case.' Fed. R. Civ. P. 26(b)(1)." *Reichard v. United of Omaha Life Ins. Co.*, 805 F. App'x 111, 116 (3d Cir. 2020). (Emphasis added.) In *Reichard*, the plaintiff sued her insurance company over denial of coverage, stemming from the company's doctor's assessment of the plaintiff. To wit, Reichard "sought information about [the reviewing doctor's] 'batting average': the fraction of benefits denials he affirmed on appeal. In other words, she wanted access to other appeals for which he had served as the medical reviewer. Presumably, she wanted to use evidence of a high denial rate to show that his business-side

---

[4]In addition, some or all of the demanded information has, apparently, already been offered and/or provided to Plaintiff by the named-Defendants in this litigation.

duties were biasing his medical judgment." *Id.* In affirming the trial court's denial of Reichard's

access to United of Omaha's data, the Third Circuit said:

> there was evidence that combing its databases for \*117 this information would
> have imposed a substantial burden on United of Omaha. Plus, the information's
> value to Reichard would have been minimal at best. A low reversal rate would
> not prove bias or a conflict of interest. Rather, Reichard would have to show
> that each of those decisions was unreasonable based on the evidence in each
> file. Doing so would require a mini-trial on each of these other appeals.

*Id.* In the present case, Plaintiff wants to force non-party AOC to do precisely the same type

of database search, retrieval, and production that was denied by the courts in *Reichard* (in a

conflict between parties). If Plaintiff if seeking to find "trends" or the "batting average" of

one or more Tulsa County judges, then this is inappropriate. The probative value of Plaintiff's

Subpoena's requests fails to justify the burden imposed on non-party AOC.

## V. BURDEN IMPOSED BY THE SUBPOENA IS UNDUE.

"It is generally recognized that a non-party involuntarily embroiled in civil litigation

should not be subjected to undue burden or significant expense merely by virtue of having

received a subpoena." *W. Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc.*, No. 11-CV-01611-

MSK-CBS, 2014 WL 1257762, at \*21 (D. Colo. Mar. 27, 2014) (*citing Exxon Shipping Co. v.

United States Department of Interior*, 34 F.3d 774, 779 (9th Cir.1994) ("The Federal Rules ... afford

nonparties special protection against the time and expense of complying with subpoenas.").

"In addition to the requirements of relevance and proportionality, discovery requests to third

parties are subject to additional restraints." *New Mexico Oncology v. Presbyterian Healthcare Servs.*,

No. 12-526 MV/GBW, 2016 WL 3452757, at \*1 (D.N.M. May 10, 2016). First, the requesting

party has the affirmative duty to "take reasonable steps to avoid imposing undue burden or

expense" on the subpoenaed party. Fed. R. Civ. P. 45(d)(1). If the subpoena nonetheless

"subjects a person to undue burden," then the court must quash or modify it. Fed. R. Civ. P.

45(d)(3). The Subpoena here fails to meet the relevance and proportionality requirements, and it fails to meet the restriction against undue burden.

As noted above, Plaintiff's Subpoena seeks materials across more than thirty (30) categories and subcategories from non-party, AOC, with no benefit to AOC. Yet the burden Plaintiff seeks to have this Court impose on AOC is great. Plaintiff's Subpoena asks AOC to produce an enormous amount of data, pulled from tens of thousands of criminal files in Tulsa County. AOC does not maintain the data in the format demanded by the Subpoena, and does not have an existing process for compiling, reviewing, and producing such records due to the Oklahoma Supreme Court's prohibition against bulk data distribution. AOC would be required to divert scarce resources to determine methods and processes to comply with the Subpoena. AOC has limited resources to do so, and certainly not in the time limit set forth.

Plaintiff's Subpoena would also have the AOC defy a specific directive of the Oklahoma Supreme Court. Bulk distribution of electronic case information (such as that demanded by Plaintiff's Subpoena) is prohibited by order of the Oklahoma Supreme Court. *In re Pub. Access to Elec. Case Info.*, 271 P.3d 775 (Okla. 2009).

The Oklahoma Supreme Court's prohibition against release of bulk data involves significant policy considerations. The criminal case file information on the OSCN website, and the criminal court files maintained by the Tulsa County Court Clerk, are as easily accessed by the public. Meanwhile, each district court performs ongoing management of its case information, such as matters that are confidential, sealed, expunged, reduced, and dismissed. Criminal justice principals and statutory mandates require that matters which are publicly available at one point may later be affected by expungement, dismissal, acquittal, reduction of charges, etc. The case type known as "NF" consists of "not filed" cases. This case type includes

arrests where no charges are filed. To maintain accurate public information regarding those involved in the criminal justice system, each district court must regularly update its data and properly manage the court record. The bulk data sought by Plaintiff's Subpoena undermines this important, ongoing obligation of the judiciary to the citizens of Oklahoma in this regard.

Additionally, criminal case data may include personal identifiers, addresses, financial information, and information regarding victims, witnesses, jurors, and other sensitive material that cannot be easily identified or segregated, and which the Oklahoma Supreme Court has determined should NOT be distributed in bulk electronic format. The bulk data sought by Plaintiff's Subpoena undermines the ongoing obligation of the judiciary to the citizens of Oklahoma in this regard.

Plaintiff's Subpoena seeks the release of an extraordinary amount of electronic case information spanning almost a three-year period. This includes the names of all criminal defendants; all counts; all dispositions; criminal cases that are not filed; the dates, codes and text of *every docket entry* entered in thousands of cases; thousands of traffic citation cases, and presumably an electronic copy of *every document filed* in tens of thousands of Tulsa County criminal cases.

Thus, temporal limits, data volume restrictions, personnel limitations, finite AOC resources, and the Oklahoma Supreme Court's directive against such production would converge to place undue burden upon the AOC.[5]

---

[5] *See, generally*, Ex. 1 to this Motion: Statement of Mike Siscoe.

## VI. SOVEREIGNTY AND IMMUNITY PRECLUDE PLAINTIFF'S DEMANDS.

The State of Oklahoma was a sovereign entity prior to its admission to the United States of America. It continues to be so. As such, and consistent with the United States Constitution, the State retains certain powers and immunities which it has consistently held since pre-statehood. Plaintiff's subpoena is an improper attempt to undo part of the State's sovereignty, and this Court should quash that attempt.

The United States Supreme Court recently reaffirmed the fundamental precept that, "[a]n integral component of the States' sovereignty [is] their immunity from private suits." *Franchise Tax Bd. of California v. Hyatt*, 139 S. Ct. 1485, 1493 (2019) (cleaned up). That includes, "prevent[ing] States from being amendable to process in any court without their consent." *Id.* The United States Court of Appeals for the Tenth Circuit has announced that a subpoena *duces tecum* is itself a "suit." Addressing the issue of "whether a subpoena *duces tecum* served on a non-party Tribe and seeking documents relevant to a civil suit in federal court is itself a 'suit' against the Tribe triggering tribal sovereign immunity," the Tenth Circuit said, "we hold the answer is yes." *Bonnet v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155, 1156 (10th Cir. 2014). Further, the Court of Appeals found that a district court's denial of the sovereign Tribe's motion to quash was "immediately appealable." *Id* at 1157.

In *Bonnet*, a petroleum landman (named Robert Bonnet) and his company entered into a business contract with the "Energy and Minerals Department" of the Ute Indian Tribe of the Uintah and Ouray Reservation." After the contract terminated, Bonnet sued various companies and individuals involved, (but not the Tribe) in federal court. During the discovery phase of the case, Bonnet issued a non-party subpoena *duces tecum* to the Tribe. After the district court's failure to grant Tribe's motion to quash the subpoena *duces tecum*, the Tribe

appealed to the Tenth Circuit. That court correctly observed Tribe's status as a sovereign, and found that the subpoena to a non-party was a "suit" for purposes of triggering sovereign immunity. The *Bonnet* court said, "[o]ur precedent . . . leads to the logical conclusion that a subpoena duces tecum served directly on a tribe is a 'suit' triggering tribal sovereign immunity." *Id* at 1159.

> As the *Bonnet* court continued:

> In *United States v. Murdock Mach. & Eng'g Co. of Utah*, 81 F.3d 922 (10th Cir.1996), we concluded "the term 'suit' embodies the broad principle that the government is not subject to 'legal proceedings,' at law or in equity' or 'judicial process ' without its consent." *Id.* at 931 (emphasis added) (quoting *Belknap v. Schild*, 161 U.S. 10, 16, 16 S.Ct. 443, 40 L.Ed. 599 (1896)). We reasoned that "[i]nterpreting the term 'suit' broadly comports with the core notion of sovereign immunity that in the absence of governmental consent, the courts lack jurisdiction to 'restrain the government from acting, or to compel it to act.' " *Id.* (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 704, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949)). We therefore held sovereign immunity rendered the United States immune from the automatic stays provided by Rules 401 and 601 of the Bankruptcy Act of 1898. *Id.* at 932. Furthermore, in *Becker v. Kroll*, 494 F.3d 904 (10th Cir. 2007), we acknowledged that " '[t]he issuance of a subpoena initiates an adversary process that can command the production of documents and things only after judicial process is afforded.' " *1160 Id.* at 922 (emphasis added) (quoting *In re Subpoena Duces Tecum*, 228 F.3d 341, 348 (4th Cir.2000)).

*Id.* at 1159-1160

Although *Bonnet* dealt directly with a Native American tribe, (and not any of the fifty states), the same reasoning applies to a sovereign state such as Oklahoma. In fact, *Bonnet* noted that the Tribe's immunity was *more* _*limited*_ than the immunity held by a state, (because the Tribe's immunity is a matter of federal common law, subject to congressional control and modification). The *Bonnet* court then observed that, "under our binding precedent—namely, *Murdock* and *Becker*—the Eleventh Amendment may well shield a state agency from discovery in federal court." *Id.* at 1161.

The Supreme Court of the State of Oklahoma and its administrative office, the AOC, have not consented to suit by Plaintiff herein. The Supreme Court has not waived the State of Oklahoma's sovereign immunity, nor has Congress abrogated the State of Oklahoma's sovereign immunity, with regard to this matter. The State's immunity is intact, and is effective.

Moreover, the Tenth Amendment confirms that the power of the federal government is subject to certain limits that reserve power to the states. The Oklahoma Supreme Court has not waived its power to regulate its own internal operations, nor has Congress abrogated the State of Oklahoma's right to do so. The Plaintiff's subpoena seeks to command the Supreme Court of the State of Oklahoma to act in a manner that it has specifically determined is not appropriate.

The Supreme Court of the State of Oklahoma, acting through its AOC, is immune to Plaintiff's subpoena, is protected by the Tenth and Eleventh Amendments to the United States Constitution, and this Court should quash the subpoena.

## CONCLUSION

The Administrative Office of the Courts is not a party to this litigation. The AOC did not set, deny, offer, revoke, or limit any of the Plaintiff's bail. Plaintiff's Subpoena seeks much data that is already publicly available online, and is made available free of charge at Oklahoma taxpayer expense. Plaintiff's Subpoena also seeks data that is irrelevant to the claims and defenses. Plaintiff's Subpoena fails in its demands to meet the most basic proportionality analysis. Plaintiff's Subpoena also seeks data that is protected, sensitive, and has been determined by the Oklahoma Supreme Court to be unfit for dissemination. Plaintiff's Subpoena seeks to impose an undue burden on AOC resources. Finally, as the Judicial Department of the sovereign State of Oklahoma, the Supreme Court and its AOC are immune

to Plaintiff's subpoena. The Administrative Office of the Courts respectfully asks this Court

to quash Plaintiff's Subpoena, and enter an order prohibiting similar subpoenas in the future.

Respectfully submitted,


*/s/*Jeb Joseph

**JEB JOSEPH, OBA # 19137**
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Division
313 N. E. 21st Street
Oklahoma City, Oklahoma 73105
Telephone:     (405) 521-3921
Facsimile:     (405) 521-4518
Email:          Jeb.Joseph@oag.ok.gov
*Attorney for non-party, Administrative Office of the Courts*


## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day November 2020, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. I further certify that a true and correct copy of the foregoing document was sent via U.S. Mail, email and facsimile to:

Hayley Horowitz
Still She Rises
567 E. 36th Street North
Tulsa, OK 74106
*Attorney for Plaintiff*


*/s/* Jeb Joseph
Jeb Joseph